Gerald P. Culkiit, J.
At the beginning of the trial, this action as against the New York Central Railroad was discontinued and at the conclusion of the entire case a motion to dismiss the complaint as against the Columbia Broadcasting System, Inc., was granted, leaving as the sole defendant Frederick Eric Birkner, individually, and doing business as Chateau Riding Academy — Theatrical Division.
The plaintiff, a television actor, was engaged by the Music Corporation of America or an affiliate thereof, to perform in a certain television production called the Medallion Theatre to be transmitted from Studio 42 of the Columbia Broadcasting-System, Inc., a tenant of the Grand Central Terminal Building.
By means of a telephonic communication by one Mr. Abrams of the Music Corporation of America, the defendant Birkner was advised that a horse was required to be on stage in connection with this production and subsequently the plaintiff and Mr. Medford, the director of the production, arrived at the stable and were shown a mare by the name of “ T-V Rose.” The plaintiff asserts that Birkner assured him that the horse had been performing on numerous occasions with well-known television personalities. The plaintiff’s contention is that the defendant, in effect, guaranteed that the horse was safe and sound and fit for the purposes of the particular production which required the plaintiff and one Charles Heston to crawl under the horse in the course of a fight scene.
The original complaint is founded in negligence and the amended complaint includes additional allegations of breach of warranty of fitness for use and misrepresentation.
At the end of the entire case the court granted a motion to conform the pleadings to the proof.
Assuming plaintiff’s right to recover as a general proposition under any theory, the plaintiff must establish that the defendant failed to exercise reasonable care either —
(1) To ascertain it was a suitable horse, having in mind all the existing and foreseeable conditions or
*624 (2) To ascertain the habits of the animal with respect to its safety and suitability for the purposes hired.
Immediately after the first rehearsal, the plaintiff complained to the director, Medford, “ that the horse moved slightly and that something should be done.” On the second run-through, which was at a much faster pace, the plaintiff crawled under the horse and as he arose or attempted to arise, the horse stepped on his left hand crushing two fingers badly.
There being no evidence of any vicious or unruly propensities known or likely to be known by the owner of this animal, I can find no basis for plaintiff’s claim in negligence. Even assuming the plaintiff could receive the benefit of the contractual obligation involved in the hiring of this horse, there is no proof of any breach of warranty or misrepresentation on the defendant’s part. The horse neither kicked, reared nor acted in any unusual manner. The defendant did not, nor can it be assumed that he did guarantee the horse to act in any manner different or contrary to its natural behavior.
The plaintiff was obligated to use the reasonable care of a prudent person, knowing by bis own testimony that the horse had moved on the first so-called run-through. The court cannot find that such a movement or even a prancing of the hind legs is an unnatural act of the animal.
Even in this modern era in the great city of New York, discounting the esteemed and sometimes maligned thoroughbred and standard-bred, there are still mounted police and odd drays to be seen and any casual observer cannot fail to note that they do not stand absolutely immobile.
The complaint is, accordingly, dismissed on the merits.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.